IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

GERALD BUTLER,

    Plaintiff,
v.                                     CASE NOS. 1:07-cv-22-SPM-AK
                                                1:07-cv-55-SPM-AK
                                                1:07-cv-216-SPM-AK

JOHN E. POTTER, et al.,

    Defendants.
_____/

**O R D E R**

Plaintiff has filed three separate lawsuits regarding his termination from the United States Postal Service and the handling of a union arbitration related to that termination.  In *Butler v. Potter*, Cause No. 1:07cv22 (*Butler I*), Plaintiff, a mail processing clerk at the Processing & Distribution Facility of the United States Postal Service in Gainesville, Florida, *see Butler I* at Doc. 1, Att., names as defendants:  John Potter, the Postmaster General, Arthur Greene, "MDO Tour III,"[1] and Danny Anderson, "Acting Supervisor Tour III."  He claims discrimination based on race, color, disability, age, and retaliation under Title VII, the ADEA, and the ADA.  The Court granted Plaintiff leave to proceed IFP in that cause and directed him to serve the defendants.  When Plaintiff did not timely serve any of the defendants, it issued a show cause

---

[1]A quick search using Google explains that an "MDO" is a "Manager of Distribution Operations" for the Postal Service.

order. Doc. 11. In response, Plaintiff moved to consolidate this action with *Butler v. Potter*, Cause No. 1:07cv216 (*Butler III*). Doc. 12. In *Butler III*, Plaintiff seeks redress only against Potter and Greene and claims discrimination based on sex, race, disability, age, and retaliation under Title VII, the ADEA, and the ADA.

In the interim, Plaintiff filed *Bulter v. Tranen*, Cause No. 1:07cv55 (*Butler II*). In the second amended complaint, which the Court secured because either it could not discern the nature of his claims or the relief requested was legally foreclosed, Plaintiff names Irving Tranen, "Federal Arbitrator"; Potter; Greene; Anderson; Joseph F. Walker, "Labor Relations Specialist"; Rebecca Hall, "Inspector"; and R.J. Young, "Inspector"[2] as defendants. He claims discrimination based on sex, race, disability, age, retaliation, and unequal treatment pursuant to Title VII, the ADEA, and the ADA.

The gist of the three complaints is this: At some point, Greene contacted the Office of the Inspector General to start an investigation into Plaintiff's FMLA usage. *Butler I*. Hall searched his porch on two occasions, taking an "item" which she did not return until later, and Young would not allow him to talk to John Pruitt, his union representative, in private. *Butler II*. On April 19, 2006, during the investigation, Michael Mathis, a steward for Plaintiff's union, the American Postal Workers Union (APWU), told the OIG agents that he did not have any experience with this type of interrogation and advised them that Plaintiff did not have representation. *Butler I*. Mathis was told that he was there only as an observer and that Plaintiff was not entitled to legal representation. *Id*. Greene attended an "interrogation" on May 24,

---

[2] He indicates that Walker is employed with the Postal Service and that Hall and Young are employed with the Office of the Inspector General.

2006, and was part of the OIG investigation.  *Id*.  At that meeting, Plaintiff was not allowed to talk to Pruitt, was labeled a flight risk by the OIG agents, and was not given his *Garrity* rights[3] or immunity.  *Id*.  The agents made Plaintiff feel like a criminal.  *Butler II*.  On June 22, 2006, Anderson said he gave Plaintiff a fact-finding, but there was no pre-disciplinary interview conducted by the supervisor, postal management did not conduct a meaningful investigation, and Greene failed to investigate Plaintiff's witness statements.  *Butler I* and *II*.  On June 28, 2006, Plaintiff received a letter of proposed removal.  *Butler I*.  This letter did not contain information regarding Plaintiff's right to appeal to the Merit System Protection Board as a Preference Eligible Veteran and was issued without just cause.  *Id*.

On July 5, 2006, Greene denied Plaintiff's presence at a Step 1 meeting.  *Butler I* and *III*.  On July 26, 2006, Greene was the Step 2 designee and told Mathis that William Hassel, the installation head or plant manager, concurred in the disciplinary decision.  *Bulter I* and *III*.  He repeated that on August 3, 2006.  *Butler I*.  On August 17, 2006, Greene sent Mathis a letter, advising him that he was the concurring official regarding the request for discipline, *Butler III*, but on August 22, Greene told the EEO Dispute Resolution Specialist that Hassel concurred in the discipline.  *Butler I* and *III*.  At that time, Greene also told the EEO that he was aware of Plaintiff's prior EEO activities but that he did not consider them when making the discipline decision.  *Butler I* and *III*.

On December 13, 2006, Tranen was scheduled to preside over two cases in the arbitration

---

[3]*See Garrity v. New Jersey*, 385 U.S. 493 (1967) (where person being investigated is given choice between incriminating himself or forfeiting his employment, and he chooses to confess, confession is not voluntary but is coerced and cannot be used in subsequent criminal prosecution).

hearing but only presided over one. *Butler II*. At that time, Greene stated that he was the concurring official, *Butler I* and *III*, thereby deceiving the arbitrator by not telling him of his different statements regarding the identity of the concurring persons, *Butler I*, and Plaintiff was made aware that Greene had called the OIG to start the investigation into Plaintiff's FMLA usage. *Id*.

In his brief to Tranen, Walker, a labor relations specialist for the Postal Service, told him that Plaintiff was given a letter of decision with the case number that was not heard by Tranen in the arbitration hearing. *Butler II*. On January 11, 2007, Tranen "denied the arbitration with the award," finding that Plaintiff had worked a second job while on sick leave without permission and failed to cooperate with the OIG after being assured of immunity. *Id*. He also found that Plaintiff was given a pre-disciplinary interview and that he was not denied due process when Greene denied him attendance at the Step 1 meeting. *Id*. Tranen further found that Plaintiff was afforded his *Garrity* rights and that he was given use immunity. *Id*. He credited Greene's testimony and concluded that Plaintiff was not truthful about working the second job delivering newspapers. *Id*.

In all of this, the only contention which even remotely resembles an actionable claim of employment discrimination is the one made in *Butler I* and *III* that Greene told the EEO that he was aware of Plaintiff's prior EEO activities but that he did not consider them when making the decision to terminate Plaintiff's employment. Even that, however, does not sufficiently allege a causal connection between the protected activity and the termination to warrant further consideration. *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (to prove causal relationship between protected activity and adverse employment action, plaintiff

need merely prove that two events are not completely unrelated). Otherwise, besides checking the boxes on the form, Plaintiff has not mentioned his race, color, sex, age, or disability or indicated how those matters figured into his termination. Furthermore, though the Court did not initially quite understand Plaintiff's "Step" references or how a federal arbitrator fit into an employment discrimination case, based on Plaintiff's references to the union, it surmised that most of his complaints involve alleged deficiencies in the grievance-arbitration procedures under the Collective Bargaining Agreement (CBA) between the APWU and the Postal Service. A cursory review of the relevant CBA confirmed this conclusion. *See* www.apwu.org.

      With all of this now set forth, the Court believes that several steps should be taken. First, *Butler III* is redundant and anything which Plaintiff wishes to add regarding his discrimination claims can be added by amendment in *Butler I*. Second, Plaintiff cannot assert claims under Title VII, the ADEA, or the ADA against individual employees of the Postal Service. He has named Potter, the head of the Postal Service, which was his employer, as a defendant, and thus, there is no need to name the supervisory employees as defendants as well.

      Third, as noted, Plaintiff has not asserted anything in *Butler I* which is sufficient to state a claim for any type of discrimination. Not only has he not made sufficient allegations to support a claim for retaliation, he also has not, for example, alleged any direct or circumstantial evidence of discrimination associated with his termination, such as evidence that a "substantially younger person filled the position...from which he was discharged," a necessary element for establishing a claim of age discrimination, *see Turlington v. Atlantic Gas Light Co.,* 135 F.3d 1428, 1432 (11th Cir.1998), or that a similarly situated white or female employee was not discharged under the same or similar circumstances. *Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir. 1999).

As to *Butler II*, it is doubtful that Plaintiff can state a claim against the arbitrator personally. *See*, *e.g.*, *Austern v. Chicago Board Options Exchange*, 898 F.2d 882, 885-87 (2nd Cir. 1990) (arbitrator in contractually agreed upon arbitration proceedings is absolutely immune from liability and damages for all acts within scope of arbitral process). Furthermore, to the extent that he seeks to vacate the arbitrator's award, his suit would be against the Postal Service and must stand on grounds other than mere error. *See*, *e.g.*, *University Commons-Urbana, Ltd. v. Universal Constructors Inc.*, 304 F.3d 1331, (11th Cir. 2002) (to vacate arbitrator's award on ground that he acted in manifest disregard of law, complainant must show arbitrator knew law and expressly disregarded it, not that he misinterpreted, misapplied, or misstated law); *Miller v. Runyon*, 77 F.3d 189, 193 (7th Cir. 1996) (though arbitrator's award can be set aside on variety of grounds, error is not one of them). Additionally, to show that the Postal Service violated the terms of the CBA, Plaintiff would also have to show that the APWU breached its duty of fair representation, an allegation which Plaintiff has not made. *See Chauffeurs, Teamsters, and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990) (to bring a § 301 action against employer, plaintiff must show that union breached its duty of fair representation in handling grievance). As to Walker and the OIG agents, Hall and Young, the Court cannot discern the bases of the claims or the nature of the complaints against them, which must arise under either federal statutory or constitutional law before they can proceed.

The Court believes that the remaining causes, *Butler I and II*, should be consolidated under Fed. R. Civ. P. 42(a), as they have a common nucleus of fact, i.e., Plaintiff's termination from employment, and can be handled more efficiently as one proceeding. They will be consolidated under the oldest number, *Butler v. Potter*, Cause No. 1:07cv22-SPM/AK, which

Plaintiff should place on all future pleadings without reference to the other case numbers.

He should also file an amended complaint, taking into consideration all of the Court's concerns and stating his best case against each and every defendant against whom he seeks relief.  Plaintiff  absolutely must be specific in his recitation of fact, attach all pertinent documents, and pay particular attention to explaining how each defendant allegedly harmed him. The Court cautions Plaintiff that this will, in all likelihood, be the last time that it allows him to amend his complaint, as despite his *pro se* status, he is not entitled to amend *ad infinitum*. Though the Court will direct the Clerk to provide Plaintiff with the appropriate Title VII form, which he is to use, he may also attach additional pages as necessary to state any other claims which do not fall under the rubric of Title VII, the ADEA, or the ADA but which involve the incidents preceding or following his termination from the Postal Service as previously alleged in *Bulter II*.  In completing the form, Plaintiff is reminded that the amended complaint must specify all the grounds for relief available to him; state the facts supporting each ground; state the relief requested; be printed, typewritten, or legibly handwritten; and be signed under penalty of perjury.  The amended complaint must also be filed in its entirety, incorporating all amendments, as matters not set forth in the amended complaint are deemed abandoned.  N.D. Fla. Loc. R. 15.1.

Accordingly, it is **ORDERED**:

That *Butler v. Potter*, Cause No. 1:07cv216-SPM/AK (*Butler III*), is **DISMISSED WITHOUT PREJUDICE**;

That *Butler v. Potter*, Cause No. 1:07cv22-SPM/AK, and *Bulter v. Tranen*, Cause No. 1:07cv55-SPM/AK, are hereby **CONSOLIDATED** and will proceed under Cause No.

1:07cv22-SPM/AK;

That the Clerk shall forward to Plaintiff the instructions for filing a Title VII complaint which include forms for filing the amended complaint;

That Plaintiff shall have until **May 29, 2008**, to file an " Amended Complaint" which contains the information noted in the instructions provided by the Clerk and is in compliance with this Order.  Plaintiff shall attach a copy of the EEOC charge and the right to sue letter to the Amended Complaint;

**That failure to respond to this Order as instructed will result in a recommendation of dismissal of this action for failure to prosecute and failure to comply with an order of this Court**;

That a copy of this Order shall be filed in all three case numbers referenced in the style of this Order.

**DONE AND ORDERED** this *29th* day of April, 2008.


 *s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**